# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Northampton, :
              Petitioner :
                      :   No. 1081 C.D. 2025
       v. :
                      :   Argued: May 12, 2026
Board of Trustees of the Pennsylvania :
Opioid Misuse and Addiction :
Abatement Trust, :
              Respondent :

BEFORE:   HONORABLE LORI A. DUMAS, Judge
            HONORABLE STACY WALLACE, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                      **FILED: July 23, 2026**

The County of Northampton (County) has filed a petition for specialized review, asserting that the Board of Trustees (Board) of the Pennsylvania Opioid Misuse and Addiction Abatement Trust (Trust) should have approved the County's expenditure of Trust funds for its fentanyl-awareness media campaign. Having reviewed the record submitted to this Court and upon consideration of the County's arguments and the Board's responses thereto, we conclude that the Board's decision is deficient in that it lacks several characteristics of a reasoned decision suitable for appellate review. Therefore, we remand to the Board with instructions that it issue an appropriate decision within 30 days.

# I. BACKGROUND[1]

## A. Trust

In 2022, the Commonwealth of Pennsylvania sued various pharmaceutical manufacturers and distributors of prescription opioids. The parties settled for approximately $1 billion. Pursuant to the terms of a consent judgment entered and approved by this Court, the Commonwealth created the Trust to receive, allocate, and disburse the settlement funds.

The Trust may approve the distribution of funds "only for the purposes set forth in Exhibit E to the Settlements." Am. Order, 10/15/24, § V(B).[2] Exhibit E is a 15-page list of approved programs and strategies addressing opioid addiction, divided into two schedules. The first schedule highlights and gives priority to core abatement strategies. Ex. E, Sch. A. For example, among those core abatement strategies, Exhibit E contemplates funding for media campaigns to prevent opioid use. Ex. E, Sch. A, § G(1).[3] The second schedule provides a non-exhaustive list of treatment and prevention efforts, as well as outlining other strategies to abate the opioid epidemic. Ex. E, Sch. B.

Each year, the Trust disburses funds to counties and other participating subdivisions, which are required to expend those funds timely and in compliance with Exhibit E. Am. Order §§ III(K), V(D)(10), VII. Each county is required to submit an annual report detailing the expenditures of such funds to the Trust.[4] *Id.* §

---

[1] We glean the facts from the record.

[2] For convenience, we refer to the amended order that created the trust.

[3] Subsection G(1) approves:

> Funding for media campaigns to prevent opioid use (similar to the FDA's "Real Cost" campaign to prevent youth from misusing tobacco) . . . .

Ex. E, Sch. A, § G(1).

[4] It appears a county is responsible for submitting annual reports on behalf of participating subdivisions within its jurisdiction. Am. Order §§ V(D)(11), VII(A).

V(D)(11).  The Board conducts a retrospective review of the expenditures to ensure the spending has been consistent with Exhibit E.[5]  *Id.* §§ V(B), VI(A)(3).  If a county fails to file a report or if the Board otherwise determines that funds have been expended inconsistently with Exhibit E, then the Board "may withhold the next year's payments."  *Id.* § X(C)(1).

A county or other participating subdivision can challenge the Board's decisions regarding compliance with Exhibit E in one of two ways.  First, any "beneficiary of the Trust may petition the Court to allow spending on an item of abatement not contained in Exhibit E, provided such spending is deemed by the Court to reduce incidence or rate of opioid addiction and overdose deaths in the Commonwealth."  *Id.* § VIII(F).  Second, any "beneficiary of the Trust may file a complaint with the Board of Trustees if the beneficiary disputes an action by the Trust with regard to that beneficiary, provided that such complaint is filed within 30 days of when the beneficiary knew or should have known of the basis for the complaint."  *Id.* § VIII(G).[6]  "If the Board of Trustees' response does not resolve the beneficiary's complaint, the beneficiary may petition this Court for a resolution of its complaint."  *Id.* § VIII(G)(2).

Per the Order, "the Trust is not a Commonwealth" agency, a local agency, a judicial agency, or a legislative agency.  *Id.* § III(Q).  This Court, however,

---

[5] It is unclear why the parties negotiated to permit expenditure of Trust funds before the Board approves the expenditure.

[6] The Board is responsible for establishing its own operating rules and procedures.  Am. Order § VI(A)(5).  To manage volume, the Board created three working groups to review county submissions and make recommendations, and it established a seven-member Dispute Resolution Committee (DRC) to hear beneficiary complaints under § VIII(G) at public meetings.  To address disputes, the Board has adopted a multi-level review process, first by a working group, then the complete Board, and finally the dispute resolution committee (DRC).  For ease, we may refer to DRC decisions as the Board's decisions.

3

retains jurisdiction over the Trust until its dissolution. *Id.* § VII(E). The participating subdivisions have agreed to this Court's jurisdiction and "have standing to petition this Court for enforcement of this Order and payment of the [funds] allocated to it." *Id.* § II(B). In July 2025, this Court further clarified its role by issuing a case management order (CMO), which directed Trust beneficiaries seeking relief under Section VIII(G)(2) to file a "petition for specialized review," which is governed by Chapter 16 of the Pennsylvania Rules of Appellate Procedure and addressed to this Court's appellate jurisdiction. *See* CMO, *Commonwealth v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243-44 M.D. 2022, filed July 22, 2025).

### B. The County's Media Campaign

In its March 2024 report, the County documented spending $21,999.98 to sponsor and distribute a newsletter as part of its "Fake is Real" fentanyl-awareness media campaign. *See* Cnty. Rpt., 3/19/24 (reporting compliance with Ex. E, Sch. A, § G(1)); Cnty. Follow-Up Resp., 5/24/24. The newsletter was intended to educate County residents, particularly remote or aging residents, about services and contact information for resources important to those struggling with opioid addiction. *See* Tr., 10/29/24, at 8-10, 26-27.

In June 2024, the Board requested additional information related to the newsletter, including the portion of funds spent that were related to opioid use disorder (OUD). In its response, the County indicated that "19% of the newsletter is related to OUD," which amounted to $4,180.00. Cnty. Resp., 7/1/24. Thereafter, in August 2024, the Board approved only this smaller portion of the total spent. The County filed a complaint; however, following a hearing, the DRC ultimately affirmed the Board's original decision. Bd.'s Final Decision, 11/4/24.

In November 2024, the County timely filed an application for relief in this Court's original jurisdiction. *See* Appl. for Relief, *Commonwealth v. Johnson & Johnson* (Pa. Cmwlth. 2022, Nos. 243-44 M.D. 2022, filed Nov. 27, 2024). Thereafter, and in accordance with our CMO, this Court issued an order directing the County to file a petition for specialized review within 30 days. *See* Cnty. Order (Ch. 16 Order), *Commonwealth v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243-44 M.D. 2022, filed July 22, 2025). On August 25, 2025, the County filed its petition. *See* Cnty.'s Pet. for Specialized Review, 8/25/25 (PSR). In its response, the Board asserted that the PSR should be dismissed as untimely.[7] Bd.'s Resp. to PSR, 9/22/25.

## II. ISSUE

The County asserts that the Board erred in approving only a portion of the expenditure related to the County's newsletter. *See* PSR at 8 (unpaginated); Cnty.'s Br. at 2.

## III. DISCUSSION

### A. Arguments

Succinctly, the County argues that "the context in which an

---

[7] We decline to dismiss or quash the PSR. The County promptly sought review in this Court when it timely filed an application for relief. Our subsequent decision to adopt Chapter 16 as the appropriate framework in which to review decisions of the Board did not impose a new jurisdictional limitation on our review.

We further note the Board's citation to *Commonwealth v. Guzman*, 301 A.3d 931 (Pa. Super. 2023) (unpublished), 2023 WL 4181976. In that case, the appellant timely appealed from the judgment of sentence imposed following his guilty plea to two counts of simple assault. *Id.* at *1. In his appeal, the appellant asserted that he had been illegally detained without bail for six months awaiting trial. *Id.* The *Guzman* Court determined that the appellant was required to file a petition for specialized review in order to preserve his bail-related claim. *Id.* at *2 (citing Pa.R.A.P. 1610). Noting that the appellant had not filed a petition for specialized review within 30 days of the order denying his bail, the *Guzman* Court reasoned that the appellant had waived the only issue preserved in his appellate brief. *Id.* at *3. Although we may cite to recent unpublished memorandum decisions of the Superior Court as persuasive, *see* 210 Pa. Code § 126, the procedural posture renders the decision in *Guzman* inapposite here.

5

advertisement appears matters." Cnty.'s Br. at 8. It does not dispute that only a portion of the newsletter directly pertained to its media campaign. *See id.* at 9-10. Nevertheless, the County maintains that it made the reasonable decision that it could best reach its target audience if it presented its fentanyl-awareness message in the context of a newsletter providing other valuable information. *See id.* Thus, in the County's view, the Trust should have approved the entire expenditure. *Id.* at 11.

The Board responds that "the vast majority of the content in the County [n]ewsletter has no obvious connection to OUD remediation or prevention, nor would its content tend to reduce incidence or rate of opioid addiction and overdose deaths in the Commonwealth." Bd.'s Br. at 22-23. In its view, apart from the sparse references to the County's fentanyl-awareness media campaign, the content of the newsletter is nothing more than "political advertising." *Id.* at 23.

The Board also rejects the County's "context matters" argument. *See id.* at 25. While the Board recognizes that targeted placement "undoubtedly matters," it concludes that opioid remediation funds cannot be spent on a platform unrelated to the campaign. *Id.*

### B. Disposition

Generally, this Court has the power to issue an order "as the interest of justice . . . may require." 42 Pa.C.S. §§ 323, 562. We may also "remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." *Id.* § 706. For example, this Court remanded for a Pa.R.A.P. 1925(a) decision because the trial court's order and record did not reveal the underlying reasoning. *Artisan Const. Grp. v. Zoning Hearing Bd. of Upper Pottsgrove Twp.*, 275 A.3d 80, 84 (Pa. Cmwlth. 2022) (*Artisan*).

Instantly, the Board's November 4, 2024 email does not reveal the

6

underlying reasoning for why the County's media campaign fell outside Exhibit E. *Cf. id.* Under these circumstances, to provide a just "resolution of [Petitioner's] complaint," Am. Order, § VIII(G)(2), we must remand to have the Board file an appropriate decision explaining its reasoning. *See* 42 Pa.C.S. §§ 323, 562, 706; *cf.* Pa.R.A.P. 1925(a); *Artisan*, 275 A.3d at 84. Without the Board's decision explaining its reasoning, we cannot conduct any appellate review. *See* Pa.R.A.P. 1601; *cf. Artisan*, 275 A.3d at 84.

The Board's decision must identify the Exhibit E Section(s) at issue and explain why the disputed media campaign does not qualify. The Board must provide specific findings that are relevant to its decision, with appropriate citations to the record that facilitate our review, and its decision must also reflect any credibility determinations that inform those findings. To the extent the Board relies on undefined terms or apparent terms of art, *e.g.*, "evidence-based" or "evidence-informed," to justify its decision, the Board must define those terms. In sum, the Board's decision must provide sufficient factual detail and reasoning that would permit this Court to exercise its appellate role in reviewing the Board's denial under Exhibit E.

## IV. CONCLUSION

For these reasons, we require the Board to thoroughly memorialize its reasoning before we can address our standard and scope of review and evaluate the Board's review of the County's expenditure of Trust funds. *See* 42 Pa.C.S. § 706. Accordingly, we remand to have the Board file a decision within 30 days, as set forth herein.

                                                                          **LORI A. DUMAS, Judge**

Judge Covey did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Northampton, :
        Petitioner :
: No. 1081 C.D. 2025
v. :
:
Board of Trustees of the Pennsylvania :
Opioid Misuse and Addiction :
Abatement Trust, :
        Respondent :

# O R D E R

AND NOW, this 23rd day of July, 2026, we REMAND to have the Board of Trustees of the Pennsylvania Opioid Misuse and Addiction Abatement Trust (Board) file a decision explaining its reasoning within 30 days. The Board's decision must identify the Exhibit E Section(s) at issue and explain why the disputed programs do not qualify. The Board's decision must include specific findings of fact and reflect its credibility determinations. To the extent the Board relies on undefined terms or apparent terms of art, *e.g.*, "evidence-based" or "evidence-informed," to justify its decision, the Board must define those terms. We ORDER the Prothonotary to serve a copy of this opinion and order on the Attorney General.

Jurisdiction retained.

---
**LORI A. DUMAS, Judge**